# Appeal of the First National Bank of Northumberland.

1. A judgment on appeal from the award of arbitrators under the Compulsory Arbitration Act, entered within five years of the time of the award, continues the lien thereof for five years, and has priority over judgments entered between the time of the filing of the award, and the entry of final judgment.

2. It is unnecessary, in such case, after the expiration of five years from the filing of the original award, to revive the same by scire facias in order to give the final judgment priority of lien over intermediate judgments entered between the time of the filing of the award and the entry of final judgment.

3. It is not necessary, in order to secure priority of lien to such final judgment, over such intermediate judgment, that the fact should be noted in the judgment docket that said final judgment is based on such award.

April 26th 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Northumberland county :* Of January Term 1882, No 177.

Appeal of the First National Bank of Northumberland from

[Appeal of the First National Bank of Northumberland.]

a decree of said court, dismissing its exceptions to and confirming the report of the auditor appointed to distribute the proceeds of a sheriff's sale of real estate.

The real estate of Amos E. Kapp & Co., was sold at sheriff's sale on February 2d 1881, under executions against said firm. The fund was paid into court, and the matter was referred to William A. Sober, Esq., to report distribution. Before him the fund was claimed, on the one hand, by John B. Packer and others, judgment creditors, and, on the other hand, by the First National Bank of Northumberland, also judgment creditors, each claiming that their respective judgments were entitled to priority in the distribution.

There was no dispute as to the material facts, which were as follows:

In 1874, the First National Bank brought four separate actions against Amos E. Kapp & Co., each of which was referred to arbitrators under a compulsory rule of reference, and in each of which an award was filed in favor of the bank, in 1874, which awards became liens on the defendants' real estate. The defendants appealed from each of said awards, in 1874.

Pending these appeals, John B. Packer and others obtained the several judgments against Amos E. Kapp & Co., upon which (or revivals of which) they claimed the fund.

The bank never revived the lien of their said awards, by scire facias or by agreement. Subsequently to the entry of the said judgments in favor of John B. Packer and others, but within five years from the date of their awards, the bank recovered final judgments in their favor upon the appeals from said awards.

These judgments were entered by the prothonotary upon the judgment index, in the usual manner, as of the dates when they were respectively obtained, no entry, note or memorandum being made on the index to show that said judgments were upon appeals from the prior awards.

The said sheriff's sale, of February 2d 1881, was within five years from the dates of said judgments, but more than five years after the dates of the original awards.

Packer et al. claimed that the awards, not having been revived according to law, had lost their lien prior to and at the time of the sheriff's sale; and that their judgments, being prior in date to the bank's judgments, were prior in lien. The bank claimed that the effect of the judgments on the appeals, during the life of the awards, was to merge the awards, thereby preserving and continuing the bank's priority of lien, as against the Packer judgments.

The auditor, in a learned and elaborate report, held that an award not revived by scire facias or agreement loses its lien at

the expiration of five years; and that such lien is not preserved or continued beyond said period by the pendency of an appeal therefrom and the entry of a judgment affirming the award within said period.

In his report the auditor said, inter alia:

"Whatever the difficulties of the question as to the limitation of the lien of an award, or of means required to continue it for a longer period than five years from the entry when (in 1835) Dietrich's Appeal (4 Watts 208) was decided, must now surely be considered settled, if a positive legislative enactment can have the effect of settling a question of disputed law, or of prescribing a rule of right and property differing somewhat from those before supposed to be established. The supposed want of power to issue a scire facias to revive and continue the lien of an award, is by this remedied and supplied; in so many words it declares the pendency of an appeal shall be no impediment. By its terms no contingency of the result of the appeal, nor any indefinite period of duration, shall attend the lien of an award, any more than that of a judgment. The invidious distinctions between awards and judgments, are by this swept away. . . . . .

"That the law contemplates the lien of an award may be lost, and must be, if its provisions are not complied with, in the event of the pendency and prosecution of an appeal, is clear from its letter, for it positively declares, 'no award of arbitrations . . . . shall continue to be a lien . . . . for a longer period than five years . . . . notwithstanding any appeal . . . . unless revived by scire facias,' &c. So by the Acts of 1810 and 1836 (the arbitration law) it is declared that an award of arbitrators, shall have the effect of a judgment, and upon entry, be a lien on land, and by the Act of 1840 (a supplement to the Acts of 1798 and 1827, limiting the lien of judgments) such award of arbitrators, like a judgment, shall have the powers and susceptibilities to have lost or perpetuated the lien thereof, just as a judgment might have lost or perpetuated its own lien. The proceedings on appeal have nothing whatever to do with the lien of the award, they can neither save nor destroy it. It is self-sustaining for five years from creation, by entry, and no longer. Nothing but a defeat of the party in whose favor an award stands, can affect the lien; and nothing but a revival according to law can perpetuate it. Of course, a defeat of the claim on which the award is founded, on appeal or otherwise, would abate its lien, just as a defeat of the consideration of a judgment, on an order opening for defense, would abate the lien of the judgment itself, because the lien of neither would then have anything to support them. But the lien of one, as well as the other, would continue for five years, or until such defeat became an established fact, but not longer without

revival, notwithstanding a trial on appeal, or on judgment opened, or other proceedings pending. For by the third section of the Act 26th March 1827, ' no order or rule of court, or any other process or proceeding thereof, shall have the effect of obviating the necessity of the revival in manner herein prescribed, of any judgment whatever.' And by the first section of the Act of 1840, passed as an express supplement to the Acts of 1798 and 1827, 'no award now entered or hereafter to be entered, shall continue a lien . . . for a longer period than five years . . . notwithstanding any appeal . . . . unless revived within that period, according to the provisions of the Act to which this is a supplement, and the supplement to the same, passed March 26th 1827.' Indeed, putting the case where the Acts of Assembly leave it, it is difficult to distinguish between the effect and consequences, as to lien, of an award appealed from, and of a judgment opened for defence ; the lien of neither is affected, but of both continues, the one notwithstanding the appeal, and the other notwithstanding the order opening ; but both must be revived within five years from date of entry, if the lien is to be continued beyond that period, notwithstanding any order or rule of court, or any other process or proceeding thereof. Can it be doubted, now, that the full strictness and requirements of the Acts of 1798 and 1827, as these relate to the limitation of the lien of judgments, and the methods by which such lien may be continued, since the Act of 1840, apply equally to awards of arbitration ? The sole end of all this legislation was, the limitation of the lien of judgments and awards, to prescribe the single methods by which they could be perpetuated as liens on land, and to exclude every other possible, as well as known, method than such as were therein prescribed."

The auditor therefore awarded payment of the judgments to Packer et al., which exhausted the fund.

Exceptions filed by the First National Bank to the Auditor's report were dismissed by the court, ROCKEFELLER, P. J., saying, inter alia, in an opinion filed :

" In addition to the reasons stated by the learned auditor, the Legislature had an important object in view at the time of the passage of the Acts of 1798, 1827 and 1840, and that was, that purchasers and lien creditors should not be required to search the lien or judgment docket for liens created by judgments or awards for more than five years prior to the time of sale or entry of liens. They are not required to search further back than five years. The judgment or lien docket is their guide. They need not look beyond that. It regulates the standing of the lien creditors. By the Act of the 29th March 1827, the prothonotary is to prepare and keep a docket, to be called the judgment docket, and into which is to be copied

[Appeal of the First National Bank of Northumberland.]

the entry of every judgment and every award of arbitrators, immediately after the same shall have been entered, such entries so to be made in the said judgment docket, shall be so made that one shall follow the other in the order of time in which the said judgments and awards shall have been rendered, entered or filed, and the entries in each case in said judgment docket shall particularly state and set forth the names of the parties, the term and number of the case, and the date, and in case the judgment shall be for a sum certain, the amount of the judgment or award ; and when any judgment shall be revived by scire facias or otherwise, or when any execution shall issue in any case, a note thereof shall be made in the proper judgment docket, at the place where the other entries in such case may have been made.

" In looking at the judgments in question in this case as they appear in the judgment docket, we have the following entry as a sample :

| Cake, Att'y. | Defendants. | Plaintiffs. | No. | Term. | Year. | Date of Lien. | Nature of Liens. | Amount. | Date of Int. |
|---|---|---|---|---|---|---|---|---|---|
| | Kapp Amos et al. | First Nat'l Bank of North'd. | 524 | August. | 1874. | Dec. 7, 1876. | Verdict. | $1,498.95. | December 7, 1876. |

" Now a party is not required to search the appearance docket; and, certainly, there is nothing on the judgment docket in these cases to induce or require a purchaser or lien creditor to look back for more than five years to discover awards of arbitrators or other proceedings by which the liens commenced at any other periods. When a scire facias is issued to revive a lien or judgment entered on a scire facias, amicable or otherwise, the judgment docket shows the fact, and a party is therefore notified that it is a continuation of a former lien, but not so when a judgment is entered on a verdict or by consent in court.

" If a party had been searching for liens on land of these defendants he would not have looked back more than five years for judgments or awards, and in that case he would not have found the awards in question. There is nothing on the judgment docket, within five years, that in any way refers to them. That in questions of distribution the judgment or lien docket regulates the standing of the lien creditors, and the sums to be paid to them, is not doubted.

" Looking at the whole case, I have come to the conclusion that the auditor was right, and that the proceeds of the sale must be distributed among the lien creditors, as they stand on

the judgment or lien docket, and taking that as the only and true evidence as to their standing, there can be no question or doubt as to their rights.

" The exceptions are dismissed and the report of the auditor is confirmed."

The First National Bank thereupon took this appeal, assigning for error the dismissing of their exceptions and the decree of distribution as reported by the auditor and confirmed by the court.

*J. A. Cake* and *S. P. Wolverton*, for the appellant.—Under the Act of March 20th 1810 (5 Sm. & Reed L. 135) and June 13th 1836 (Purd. Dig. 84, pl. 50, 51), an award when filed had the effect of a judgment and remained a lien " until reversed upon appeal or satisfied according to law :" Dietrich's Appeal, 4 Watts 208. The Act of April 21st 1840 (Purd. Dig. 85, pl. 54) enacted that awards should not continue a lien for more than five years, " notwithstanding any appeal which may have been entered therefrom, unless revived within that period " in the manner provided for the revival of judgments. Reading this act in connection with the former Acts relating to compulsory arbitration, its effect is that the lien of an award, which has been appealed from, shall not continue longer than five years in cases where the appeal has not been prosecuted to final judgment within five years. Where a final judgment has been obtained on appeal within five years from the date of the award no appeal is pending at the expiration of five years ; the award is merged in the judgment, and the Act of 1840 has no application. Suppose the judgment on the appeal, within five years, was for a less sum than the award, the theory of the court below would require the award to be revived for its full amount. Such has never been the understanding nor practice of the profession. Prior to the Act of 1840, a judgment on appeal affirming an award revived and brought into operation the award, with its incidents of lien and accruing interest from the date of the award : Reed *v.* Garvin's Exec'rs, 7 S. & R. 355. We contend that the Act of 1840 in no way changed the effect of an award appealed from, except to provide that its lien should expire at the end of five years, if the appeal should be then pending. If the appeal be determined within the five years, by a final judgment, there exists no award to revive, the judgment has taken its place. If the appeal be not determined by final judgment within five years, the award must be revived by scire facias or by agreement, when its lien will be continued " until reversed upon appeal or satisfied according to law." Such revival would not determine the rights of the parties, but only continue the lien until the award merged into a final judgment. The appel-

lees' judgments were obtained, pending the appeals, within five years of the dates of our awards, and were therefore subsequent in lien to the awards; our judgments on the appeals were recovered subsequently to the appellees' judgments, but also within five years of the dates of the awards; the recovery of our judgments and the merger of the awards occurred co instanti; there was therefore no moment of time when the appellees' judgments could be let in between the lien of our awards and the lien of our judgments; and the sheriff's sale having taken place within five years from the date of our judgments, the fund should have been awarded to us and not to the appellees.

*John B. Packer* and *W. I. Greenough*, for the appellees.—The express terms of the Act of 1840 provide that the lien of an award shall not continue longer than five years, unless duly revived, "notwithstanding any appeal which may have been entered." The appellants read into the Act a proviso which is not there, viz., provided the appeal has not been prosecuted to final judgment within five years. This is unwarranted by the context, by the spirit of the Act, or its effect as a part of the general legislation relating to arbitrations. The plain meaning of the Act is that the limitation shall begin to run against the lien of the award on the day of its entry, notwithstanding the entry of an appeal. Whether or not the appeal is prosecuted to judgment within five years is wholly immaterial. The award must be revived " according to the provisions of the Act to which this is a supplement (Act of 1798 relating to revival of judgments) and the supplement to the same passed March 27th 1857." These provide that judgments may be revived only by scire facias or agreement duly filed within five years; and the latter Act (1827) provides, § 3, "and, moreover, no order or rule of court or any other process or proceeding thereof shall have the effect of obviating the necessity of the revival, in the manner herein prescribed, of any judgment whatever. The cases show that the lien of the verdict and judgment does not relate back to the award; and that the award is not extended by the verdict to cover any other amount, from the land bound by it, than that mentioned in the award : Christy *v.* Crawford, 8 W. & S. 99 ; Lentz *v.* Lamplugh, 2 Jones 344.

There is no such incongruity in having for the same debt a lien by the award, and another lien by the verdict and judgment on the appeal, as to obviate the necessity of a revival of the award. Liens are held for the same debt by mortgage and judgment on its accompanying bond ; by mechanic's lien and a judgment for the same debt: Crean *v.* McFee, 2 Miles 214 ; by mechanic's lien, and a lien by death, for same debt ; and the lien by death does not extend the mechanic's lien for

another period of five years and dispense with the writ of scire facias thereon required by Act of Assembly : Hershey v. Shenk, 8 Smith 384–5.

But it is contended further that whether the verdicts be, or not, considered as a compliance with the provisions of the Act of 1827, yet there is not such entry of the continuance of the liens of the awards on the judgment or lien docket as will entitle them to priority in the distribution. The "judgment" or "Lien Docket" required to be kept by the Act of 29th March 1827 (P. L. 155), is the sole guide appointed by law for determining the order of the distribution of the proceeds of sheriff sales among lien creditors, and of the amount of each ; and though a judgment be properly revived, yet unless the revival is entered on the Lien Docket and entered there properly in its order it will be postponed to those which are properly entered : Kendig's Appeal, 1 Norris 68; Bear v. Patterson, 3 W. & S. 233 ; Mehaffey's Appeal, 7 W. & S. 200; Hutchinson's Appeal, 11 Norris 186 ; Wood v. Reynolds, 7 W. & S. 406.

The entries in the judgment-index of the awards, verdicts and judgments thereon in favor of the First National Bank of Northumberland against Amos E. Kapp, were made in such form that a purchaser would not be led to look for the same liens in favor of the First National Bank prior to the entries of the verdicts.   He would find there the names of the parties, the original number and term of the action, the date of liens, viz., one on " 7th December 1876, by verdict," the other " 2nd Feb. 1877, by verdict," and subsequently judgments on these verdicts ; and no notice was made of the prior award nor is there any indication of the award.   There is nothing in all this to direct the purchaser to any thing or lien earlier in these actions ; on the contrary he is there informed that the liens commenced on the days there stated.   And on going back to the full limit of five years prior to the sheriff's sale he finds no liens except those to which the auditor and court below have awarded the money in question.

Mr. Justice TRUNKEY delivered the opinion of the Court, May 22d 1882.

It is provided by the Act of 1836, relating to compulsory arbitrations, that every award, properly entered of record, "shall have the effect of a judgment with respect to the party against whom it is made, from the time of the entry thereof, and shall be a lien upon his real estate, until reversed upon appeal, or satisfied according to law." This is similar to the prior statutes upon the same subject, and continues the lien of an award from which there has been an appeal, until it shall be reversed, or satisfied : Ramsey's Appeal, 4 Watts 71; Dietrich's

Appeal, Id. 208. Such lien was of indefinite duration, dependent upon the delay in bringing the cause to a final trial, and continuing without revival or subsequent notice in any form. For the manifest purpose of placing the lien of an award upon like footing as that of judgments, or mechanics' liens, the Act of April 21st 1840, was enacted, providing for the limit of the lien of an award to five years, when an appeal is pending, unless revived in the same manner as judgments may be revived. Before that act, awards unappealed from were judgments whose liens would expire, if not revived, as the liens of other judgments. And so they have been since.

An award against a defendant, appealed from, is not a judgment, but has the effect of a judgment as a lien upon his real estate within the county where the suit is pending, until the determination of the appeal: Hallman's Appeal, 18 Pa. St. 310. If judgment be obtained for the amount of the award, or less, the lien of that judgment will continue for five years from its date, and take effect from the time the award was entered of record. The judgment does not take the place of the award, but brings it into active operation with respect to its incidents of lien and accruing interest which attached from the filing of the report. Where the judgment on the appeal is for a less sum than the award such sum is the amount which continues a lien : Reed *v.* Garvin, 7 S. & R. 353. If a larger sum than the award be recovered, the lien of only so much as the award, takes effect from its date. It is the award that is made a lien, and an additional sum which formed no part of it, cannot be extended : Christy *v.* Crawford, 8 W. & S. 99. It cannot be pretended that the Act of 1840 has made any change in the effect of a judgment in the cause, after an appeal from the award. It has made no difference in the procedure to obtain judgment. Its sole effect is to limit the lien of the award, unless revived, and the revival merely continues the lien until reversal, or satisfaction, as it formerly continued without revival. If the lien has not expired, it is extended by the judgment; if expired, the lien of the judgment begins with its entry, or with the verdict of the jury.

Why revive the lien of an award which has been appealed from, after final judgment? The judgment is the end of litigation, it becomes the lien, its payment may be enforced by execution to be levied upon either real or personal estate. The award no longer is a security ; it never could have been enforced by execution ; its efficacy terminated at the entry of the judgment. Its revival would not preserve the lien of the judgment, and would be a vain thing. To construe the Act of 1840 so that the lien which has been extended by the final judgment, will expire in five years from the entry of the award, unless the

award be revived after such judgment, would be a departure from its plain intendment. So far as advised, this is the first demand for such construction. The practice has been as if the Act had no application to a case where final judgment was entered within five years from the filing of the award, and if the meaning were doubtful, the general understanding and practice of the profession would be considered; but it is not doubtful.

The limitation began to run against the liens of the awards in favor of the First National Bank on the day they were entered. They had not expired at the date of the judgments. The appellees claim that these judgments were defectively entered in the judgment-docket, and for this cause also are not entitled to the money. Section 3 of the Act of March 29th 1827, requires the prothonotary to keep a judgment-docket in which "no case shall be entered until after there shall have been a judgment or award of arbitrators in such case, and into which shall be copied the entry of every judgment and every award of arbitrators, immediately after the same shall have been entered; which entries, so to be made in the said judgment docket, shall be so made that one shall follow the other in the order of time in which the said judgments and awards shall have been rendered, entered or filed, as aforesaid; and the entries in each case in said judgment-docket shall particularly state and set forth the names of the parties, the term and number of the case, and the date, and in case the judgment shall be for a sum certain, the amount of the judgment or award; and when any judgment shall be revived by scire facias or otherwise, or when any execution shall issue in any case, a note thereof shall be made in the proper judgment-docket, at the place where the other entries in such case may have been made." Pur. Dig, 822, pl. 18. The judgment-docket is intended to afford purchasers and subsequent incumbrancers certain information in regard to the lien of judgments. Hence, if the entry is in a wrong name, so that those searching may be misled; or if it is wrongly described as to amount, or in any other material particular, third parties will be protected in acting on the faith of it: Coyne v. Souther, 61 Pa. St. 455. The Act of April 22d 1856, Pur. Dig. 824, pl. 23, made additional provision, that the lien of no judgment, execution levied on real estate, or scire facias to revive a judgment, shall commence or be continued, as against a purchaser or mortgagee, unless the same be indexed in the judgment-index. Whether it is necessary to note on the judgment docket, when final judgment is entered, that there was an award of arbitrators, in order to protect the lien as against third persons, need not be determined in this case. That the judgments were properly entered on the judgment-docket to preserve their liens

from the date of such entries, against everybody, is not denied. That the awards were liens from the date of filing until the date of the judgments, is unquestioned. No creditor whose lien attached subsequent to the appellant's judgments, can take the money in preference. What right have creditors whose liens attached between the filing of the appellant's award and the entering of the judgments in the same cases?

As a general rule, the judgment-docket regulates the standing of lien creditors and the sums to be paid to them. The design of the statute requiring judgments to be entered on a judgment-docket in the order of time in which they are rendered, was to furnish knowledge of the liens to subsequent purchasers and lien creditors. Notice is the true purpose. Actual notice of a a judgment defectively entered, is equivalent to the constructive notice by a proper entry. It is only a subsequent incumbrancer who can claim to have suffered injury from a want of notice of a prior lien : Hood & Co.'s Appeal, 51 Pa. St. 204. The judgments of the appellees were entered subsequent to the awards. They had the full legal notice of prior liens in favor of the appellants. They gave credit in view of these liens; at least, in this view, their own liens were taken. As respects such creditors, they had notice from the entry of the awards, and have suffered no injury from the omission to note at the place of entry of the judgments that they were revivals of awards. Had the liens of the awards been dropped then the appellees would have become the prior lien creditors; now they are posterior, and neither the statute nor any rule in equity requires that the appellants' lien shall be postponed to theirs.

We are of opinion that the judgments in favor of the appellant, described in the fourth assignment of error, as against liens subsequent to the filing of the awards in said cases, are first entitled to payment out of the proceeds of the sheriff's sales.

Decree reversed, at the cost of the appellees, and the record ordered to be remitted that distribution may be made in accord with the foregoing opinion.